UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RODNEY HAMILTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-3600** |
| **CHARLES FOTI, LOUISIANA ATTORNEY GENERAL, JON A. GEGENHEIMER, CLERK OF COURT, 24th JUDICIAL DISTRICT, ET AL** | **SECTION "R" (4)** |

### REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss Plaintiff's Complaint (Rec. Doc. No. 6)** filed by the defendant, Louisiana Attorney General Charles C. Foti, Jr., seeking dismissal of the plaintiff's claims for lack of jurisdiction and for failure to state a claim for which relief can be granted. Also before the Court is a **Motion to Dismiss Pursuant to Rule 12(b)(6), or in the alternative, Motion for Summary Judgment Pursuant to Rule 56 (Rec. Doc. No. 12)** filed by the defendant, Clerk of the 24th Judicial District Court John A. Gegenheimer, seeking dismissal of the plaintiff's claims under the *Rooker/Feldman* doctrine, for failure to state a claim for which relief can be granted, and under the doctrine of qualified immunity. These motions, along with the entire case, were referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1)**

**and(2)**. Upon review of the entire record, the Court has determined that the matter can be disposed of without an Evidentiary Hearing.

**I.     Factual Background**

    **A.     The Complaint**

The plaintiff, Rodney Hamilton ("Hamilton"), filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against Louisiana Attorney General Charles C. Foti, Jr., Clerk of the 24th Judicial District Court John A. Gegenheimer, challenging the constitutionality of Louisiana's Prison Litigation Reform Act ("LPLRA"), La. Rev. Stat. Ann. § 15:1186(B)(2)(a), (b), and (c), as applied to his legal malpractice suit filed in the 24th Judicial District Court. He claims that the application of the statute by Gegenheimer to his case denied him due process, equal protection, and access to the courts.

Hamilton alleges that, after some non-specified mis-communications with his post-conviction counsel, Arcenious F. "Sonny" Armond, he filed a malpractice action against Armond in the 24th Judicial District Court for Jefferson Parish. He filed the suit as a pauper under the provision of the LPLRA to recover fees paid to Armond for him to pursue post-conviction relief challenging Hamilton's criminal conviction, for which Hamilton is now serving a life sentence. Hamilton alleges that Armond eventually filed an exception of prescription in the state malpractice case seeking dismissal of the action. Hamilton claims that he was not allowed to file an opposition reply to Armond's exception because the clerk of court, John A. Gegenheimer, imposed a stay against him pursuant to La. Rev. Stat. Ann. § 15:1186(B)(2)(a), (b) and (c) for non-payment of costs.[1] The

---

[1] The relevant portions of La. Rev. Stat. Ann. § 15:1186, also known as the Louisiana Prison Litigation Reform Act, provide as follows:
    B.(2)(a) The order granting a prisoner's request to proceed in forma pauperis automatically stays all proceedings, including any service of process, until all costs of court or fees due the clerk by the

exception was granted by the state trial court and the malpractice case was dismissed. Hamilton claims that he tried to file an appeal from the dismissal but his request for pauper status was denied and another stay was imposed until all costs were paid to the court.

Hamilton states that it is because of these actions that he has filed this § 1983 action challenging the constitutionality of the LPLRA, the application of which caused the denial of his rights to due process, equal protection, and access to the courts.

He also alleges that the statute was erroneously applied to prevent his further filings, including the filing of an appeal from the dismissal of his suit. He claims that the defendants utilized the statute to prevent him, as an inmate, from pursuing a viable claim in state court. As relief, he seeks a declaratory judgment finding the statute unconstitutional, and an order that the state's stay order be lifted and his suit against Armond reinstated. He also seeks recovery of costs.

B.    **Pending Motions**

In response to Hamilton's complaint, Foti filed a Motion to Dismiss seeking dismissal of Hamilton's claims for lack of jurisdiction under the *Rooker/Feldman* doctrine, which prohibits collateral attack of a state court judgment in federal court. He also argues that the Louisiana statute

---

prisoner in this matter are paid. During the pendency of the stay the prisoner may not take any action to prosecute the suit, including but not limited to filing any pleadings, discovery, or motions other than a motion for voluntary dismissal or a motion to lift the stay because all costs have been paid.
(b) If at any time during the pendency of the action additional costs of court or fees due the clerk by the prisoner accrue and are unpaid by the prisoner, then upon order of the court ex proprio motu or upon motion of the clerk or any other party, the action may be stayed as provided herein until all such additional costs are paid.
(c) If the prisoner does not pay the full court costs or fees within three years from when they are incurred, the suit shall be abandoned and dismissed without prejudice. This provision shall be operative without formal order, but, on the court's own motion or upon ex parte motion of any party, the clerk or other interested person by affidavit which provides that the full court costs and fees have not been paid within three years from when they were incurred, the trial court shall enter a formal order of dismissal as of the date of its abandonment. The order shall be served on the plaintiff pursuant to Code of Civil Procedure Article 1313 or 1314, and the plaintiff shall have thirty days from date of service to move to set aside the dismissal. However, the trial court may direct that a contradictory hearing be held prior to dismissal.

is not unconstitutional as applied to indigent prisoners and the complaint fails to state a claim for which relief can be granted.[2] Hamilton filed an opposition to this motion arguing that his action is not intended as a collateral attack to the dismissal of the case but instead is a challenge to the constitutionality of the statute as applied to his case.[3]

Gegenheimer also filed a motion seeking dismissal of Hamilton's claims under the *Rooker/Feldman* doctrine, for failure to state a claim under § 1983, and under the doctrine of qualified immunity. Hamilton filed an opposition to this motion arguing that the Rooker/Feldman doctrine did not apply to his case.[4]

## II.     Standards of Review

### A.     Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, __ U.S.__, 127 S. Ct. 1955, 1974 (2007); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (recognizing a change in the standard of review). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all

---

[2]Foti also suggests that Hamilton's claims should be dismissed as frivolous because they lack an arguable basis in law or in fact. Rec. Doc. No. 6, p. 1. The framework set forth in Title 28 U.S.C. § 1915 and §1915A and Title 42 U.S.C. § 1997e, are statutory directives for the Court to conduct preliminary review of the pleadings pursuant to the Prison Litigation Reform Act of 1996. There is no mechanism in that statute for counsel to move the Court to conduct its statutory review. By its very language, a motion to dismiss based on the failure to state a claim must be brought by the party or counsel under Fed. R. Civ. P. 12(b)(6).

[3]Rec. Doc. No. 10.

[4]Rec. Doc. No. 15.

allegations in the complaint are true (even if doubtful in fact)." *Id*., 127 S. Ct. at 1965 (parenthetical in original) (quotation marks, citations, and footnote omitted).  Plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Id*. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*., 127 S. Ct. at 1965 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In resolving a Rule 12(b)(6) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint.  However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir. 1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

Further, the United States Fifth Circuit Court of Appeals has held that, when reviewing *pro se* complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972).  In *Taylor v. Gibson*, 529 F.2d 709 (5th Cir.1976), the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Id.*, 529 F.2d at 713-14; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### B.    Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id.*, at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

### III. Analysis

#### A. *Rooker/Feldman* Doctrine

In both motions to dismiss, the defendants contend that Hamilton seeks collateral review of the state court judgment against him and moves the Court to find that it lacks jurisdiction to hear such a challenge pursuant to the *Rooker/Feldman* doctrine. Hamilton opposes dismissal urging that he does not challenge the judgment of dismissal but instead challenges the unconstitutional results of the application of the LPLRA's stay provision to his state case, that is the denial of due process, equal protection, and access to the courts.

No court of the United States, other than the United States Supreme Court, can entertain a proceeding to reverse, modify, or otherwise engage in an appellate review of, a state court decision. *See Johnson v. DeGrandy*, 512 U.S. 997, 1005-1006 (1994); *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 287, 296 (1970); *Matter of Reitnauer*, 152 F.3d 341, 343 (5th Cir. 1998); *Brown v. Chastain*, 416 F.2d 1012, 1013-14 (5th Cir. 1969); 28 U.S.C. § 1257 (statute establishing Supreme Court jurisdiction to review the "[f]inal judgments or decrees

rendered by the highest court of a State"). It is this jurisdictional rule which forms the basis of the *Rooker/Feldman* abstention doctrine cited by the defendants.

This doctrine is derived from two decisions of the United States Supreme Court. The first is *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), in which the Court held, without a full discussion, that in certain cases a federal district court has no jurisdiction to vacate or nullify a state court judgment. In the second case, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Court held that district courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in [the United States Supreme Court]." *Feldman*, 460 U.S. at 486.

Under *Rooker/Feldman*, a federal district court simply lacks jurisdiction to entertain collateral attacks on a state court judgment. *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994). This jurisdictional bar is not limited to actions in federal court that explicitly seek review of a state court decision, but also extends to those "in which the constitutional claims presented . . . are inextricably intertwined with the state court's grant or denial of relief." *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986) (internal quotation and brackets omitted); *Feldman*, 460 U.S. at 483-84 n.16; *see also*, *Johnson*, 512 U.S. at 1005-1006 (under *Rooker/Feldman*, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a [federal] district court").

Moreover, the United States Fifth Circuit has repeatedly held that a plaintiff cannot circumvent the *Rooker/Feldman* doctrine merely by recasting a complaint in the form of a federal civil rights action. *See Chrissy F. By Medley v. Miss. Dep't of Public Welfare*, 995 F.2d 595, 598-99

8

(5th Cir. 1993); *Hale*, 786 F.2d at 690-91; *Reed v. Terrell*, 759 F.2d 472, 473 (5th Cir. 1985); *Hagerty v. Succession of Clement*, 749 F.2d 217, 220 (5th Cir. 1984); *Sawyer v. Overton*, 595 F.2d 252, 252 (5th Cir. 1979); *Williams v. Tooke*, 108 F.2d 758, 759 (5th Cir. 1940). The Supreme Court has made it clear that the *Rooker/Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005).

In the instant case, Hamilton requests several forms of relief from this Court. He seeks a determination that the stay provision of the LPLRA is unconstitutional as applied to him. He also requests that this Court order that the stay of his litigation be lifted and his case reinstated so that he can appeal the trial court's dismissal of his claim.

Hamilton has not, however, asked this Court to review the dismissal of his state case on a substantive level, i.e. prescription of his claims, nor has he asked the court to overturn its judgment. He asks only that the unconstitutional stay provision be nullified as to his case so that he can pursue what he refers to as due process. This not a direct challenge to the substantive ruling made by the state trial court. Nor is this "inextricably intertwined" with the state court's ruling since a lifting of the stay would not change the underlying fact that the case is dismissed. It would only allow Hamilton to file papers in the state court without having to pay out the balance of his state court costs. For this reason, the Court is of the opinion that the *Rooker/Feldman* doctrine is not applicable here nor does it prevent this Court from considering Hamilton's general constitutional challenge to the stay provision of the LPLRA.

### B. Failure to State a Claim for Which Relief Can be Granted

In both motions, the defendants argue generally that Hamilton has failed to state a constitutional violation under § 1983 for which relief can be granted. The Court finds that this argument in both motions has merit.

#### 1. Claims against Foti

A thorough review of the complaint reflects that Hamilton has not alleged any claim against, or action or inaction by, Attorney General Foti. Under § 1983, the plaintiff must prove that a constitutional violation occurred and that the defendant's actions were taken under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). A defendant may be liable under § 1983 only if he was personally involved in the acts causing the deprivation of the plaintiff's constitutional rights or a causal connection existed between an act by that defendant and the alleged constitutional violation. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir. 1980).

In this case, Hamilton has not alleged a constitutional violation at the hands of Foti or that Foti was in any way responsible for the application of the stay provision of the LPLRA to his case. Without any factual basis for his claim, his claims must be dismissed for failure to state a claim for which relief can be granted. The defendant Foti's Motion to Dismiss should be granted and the claims against him dismissed with prejudice for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Alternatively, Hamilton's claims, if found by a reviewing court to be urged against Foti, may be dismissed for the reasons to follow in addressing the claims against Gegenheimer.

### 2. **Claims against Gegenheimer**

The defendants have also alleged that Hamilton has otherwise failed to state a constitutional violation or that his constitutional rights to due process, equal protection, and access to the courts were violated by the application of the LPLRA stay provision by the defendant Gegenheimer in his role as Clerk of the 24th Judicial District Court.

As an initial matter, the defendants are incorrect in their suggestion that this federal district court has determined that the stay provision is constitutional in *Mahogany v. La.R.S. 15:1186(A)(2) and (B)(2)(a)*, 2007 WL 1851941 (E.D. La. Jun. 27, 2007) (Barbier, J., adopting the Report and Recommendation of Knowles, M.J.). To the contrary, the dismissal in *Mahogany* was based on the plaintiff's failure to name a proper defendant. It was only through dicta that the Court resolved that, if proper defendants had been named, his claims would be frivolous for failing to establish a constitutional violation.[5]

In this case, Hamilton alleges that the stay provision of the LPLRA is unconstitutional. It is undisputed by the parties that, when applied, the provisions of the LPLRA allow prisoners to file civil actions in the state courts as paupers. However, the LPLRA also provides that the actions are stayed, or not allowed to proceed, until the fees are paid in full. This automatic stay does not apply where the state court finds that the complaint is seeking review of prison administrative proceedings, seeking post-conviction or habeas corpus relief, or where the inmate is in imminent danger of serious physical injury and the suit can provide injunctive relief to avert the danger.

The provisions of the LPLRA "are largely based on corresponding provisions of the federal Prison Litigation Reform Act in 28 U.S.C. § 1915." *Vincent v. Creed*, 917 So.2d 1289, 1292 (La.

---

[5]The Court, nevertheless, finds guidance in the analysis of the court in that case.

App. 2d Cir. 2005); *Cheron v. LCS Corrections Services, Inc.*, 872 So.2d 1094, 1098 n.3 (La. App. 1st Cir. 2004). Undoubtedly, the federal Prison Litigation Reform Act of 1996 has been deemed constitutional. *See e.g.*, *Porter v. Nussle*, 534 U.S. 516 (2002). The federal courts, however, have not addressed the constitutionality of any portion of the LPLRA. The federal statutory framework also does not have an automatic stay provision like that found in the LPLRA.

Nevertheless, the Louisiana state courts have determined that the LPLRA does not violate the Louisiana Constitution. *See Warren v. Easter*, 914 So.2d 586 (La. App. 1st Cir. 2005); *Rhone v. Ward*, 902 So.2d 1258 (La. App. 2d Cir. 2005), *writ granted and remanded on other grounds*, 920 So.2d 217 (La. 2006). The review of this Court also finds that the LPLRA as applied to Hamilton did not violate his rights to due process, to equal protection or to access to the courts, as he argues.

Hamilton first alleges that his basic rights to due process have been violated by the fee provisions of the LPLRA. "Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition and the Fifth and Fourteenth Amendment due process clauses." *Chrissy F. by Medley*, 925 F.2d at 851 (footnotes omitted). The filing fees collected by the courts "are necessary to pay the administrative costs of litigation and, in part, to discourage baseless suits." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1992). As such, there is no absolute right to proceed in court without paying a filing fee due in civil matters. *Startti v. United States*, 415 F.2d 1115, 1116 (5th Cir. 1969). "[R]ather it is a privilege extended to those unable to pay filing fees when the action is not frivolous or malicious." *Id*.

Thus, the United States Supreme Court has held that the waiver of court fees is the exception to the rule and should only be considered where a "fundamental interest" of the indigent person is at stake. *M.L.B. v. S.L.J.*, 519 U.S. 102, 114 (1996). This limited category includes cases "involving

12

state controls or intrusions on family relationships." *M.L.B.*, 519 U.S. at 116. Otherwise, the Constitution does not require that an indigent person be allowed to pursue a civil case without prepayment of fees. *Id.*

In the instant case, Hamilton's malpractice action does not fall within this narrow scope recognized by the Supreme Court. The Court also notes that Hamilton was in fact granted pauper status. His discontent, however, is with the fact that the Louisiana statute creates a systematic collection scheme of the fees before the case is allowed to proceed. This graduated scheme of collection is akin to that of the federal Prison Litigation Reform Act which, as noted above, has been deemed constitutional. *See Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996); *Norton v. Dimazana*, 122 F.3d 286 (5th Cir. 1997).

The Court does not find Louisiana's graduated scheme of collection violates Hamilton's fundamental constitutional rights. A statute of this sort, as a general rule, will be upheld as long as it is "rationally related to a legitimate state interest." *Pennell v. City of San Jose*, 485 U.S. 1, 14 (1988). In addressing the LPLRA, the Louisiana courts resolved that "the purpose of the [LPLRA] is to curtail baseless and nuisance suits by prisoners." *Rhone*, 902 So.2d at 1262. "It can hardly be doubted that deterring frivolous and malicious lawsuits, and thereby preserving scarce judicial resources, is a legitimate state interest." *Carson*, 112 F.3d at 822.

These sentiments are echoed by the federal cases which addressed the federal Prison Litigation Reform Act of 1996. *Norton v. Dimazana*, 122 F.3d 286 (5th Cir. 1997). The United States Fifth Circuit has also found that drawing a distinction between prisoners and other civil litigants with respect to pauper status is clearly rational, because "pro se civil rights litigation has

become a recreational activity for state prisoners, and prisoners have abused the judicial system in a manner that non-prisoners simply have not." *Carson*, 112 F.3d at 822.

The Fifth Circuit has also posited that the effects of the prisoner-imposed fee provisions "changes the rules of i.f.p. litigation, requiring indigent prisoners for the first time to make the same prudential decisions about the merits of their lawsuits that everyone else makes before filing." *Norton*, 122 F.3d at 291 (*citing Adepegba v. Hammons*, 103 F.3d 383, 386 (5th Cir. 1996). The Louisiana courts have similarly found that the LPLRA's stay provision encourages prisoners to resist filing "suits that lack merit and that are filed for recreational or harassment purposes." *Rhone*, 902 So.2d at 1262. The statute achieves the goal of curtailing unnecessary litigation and "is supported by a rational basis reasonably related to a governmental interest and does not violate equal protection under our state constitution." *Id*. Hamilton has not established that the imposition of the LPLRA in some way violated his constitutional rights so as to invoke the due process clause.

The Court further finds that Hamilton has failed to establish a violation of his right to equal protection. The Equal Protection Clause directs that persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). "Disparate impact alone cannot suffice to state an Equal Protection violation; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir.1997). Thus, to state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class. *Washington v. Davis*, 426 U.S. 229, 247-48 (1976). It is, however, a fundamental premise that neither prisoners nor indigents constitute a suspect class for purposes of the Equal Protection Clause of the Fourteenth Amendment. *See Harris v. McRae*, 448 U.S. 297, 323 (1980); *Carson v. Johnson*,

112 F.3d 818, 821-22 (5th Cir. 1997); *Garcia v. Dretke*, 388 F.3d 496 (5th Cir. 2004). Hamilton therefore has failed to state a violation of the Equal Protection Clause simply because he is an indigent prisoner subject to the LPLRA.

Hamilton also suggests that he has been denied the right to access to the courts in a timely manner as a result of the stay provision of the LPLRA. As mentioned above, it has long been recognized that prisoners generally enjoy the constitutional right of access to the court. *Bounds v. Smith*, 430 U.S. 817 (1977); *Johnson v. Avery*, 393 U.S. 483, 483-85 (1969). This right of access for prisoners is not unlimited, however. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

Inmates are "not guarantee[d] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355. Instead, they are guaranteed "the conferral of a capability-the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 351; *Johnson*, 110 F.3d at 310. The United States Fifth Circuit has resolved that "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir.1993) (footnotes omitted).

As evidenced by the documents attached to Hamilton's complaint and his statements therein, he was able to accomplish the submission of his suit to the state trial court and has subsequently filed documents seeking review of that claim, and post-conviction relief in the Louisiana Fifth Circuit Court of Appeal. The lawsuit in question was neither a challenge to his sentence nor to the conditions of confinement. It was a "malpractice" action to recover fees paid to Armond to pursue

post-conviction review of his sentence. This is not of the type of suit within the parameters of *Bounds*. *See Lewis*, 518 U.S. at 351; *Johnson*, 110 F.3d at 310.

The Court also notes that no issue of a constitutional right would have been invoked by any alleged "malpractice" by Armond during Hamilton's state post-conviction proceedings because the constitution does not recognize a right to counsel during post-conviction proceedings. *See Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). The Court would also question whether *Bounds* would protect such a filing as "nonfrivolous" in nature since the state proceeding was dismissed as prescribed, or filed beyond the state statute of limitation. Nevertheless, considering the foregoing, the Court does not find that the application of the stay provision of the LPLRA by Gegenheimer violated Hamilton's right to access the state courts.

The Court finds that Hamilton has failed to state a claim for which relief can be granted against Gegenheimer. For the foregoing reasons, the motion to dismiss should be granted and the claims against Gegenheimer dismissed.

**IV.     Recommendation**

**IT IS THEREFORE RECOMMENDED** that the **Motion to Dismiss Plaintiff's Complaint (Rec. Doc. No. 6)** filed by Attorney General Charles C. Foti, Jr., be **GRANTED** and the claims against him be dismissed for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS FURTHER RECOMMENDED** that the **Motion to Dismiss (Rec. Doc. No. 12)** filed by Clerk of Court Jon A. Gegenheimer, be **GRANTED** and the claims against him be dismissed for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS FURTHER RECOMMENDED** that the **Alternative Motion for Summary Judgment (Rec. Doc. No. 12)** filed by Gegenheimer be **DENIED** as moot.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ___9th___ day of January 2008.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**